UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

REINELLA S. KIRILOVA, *as Administratrix
of the Estate of William Allen Young, Jr.*,   Plaintiff,

v.   Civil Action No. 3:17-cv-481-DJH-DW

RUSSELL BRAUN, et al.,   Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Reinella Kirilova brings this action as Administratrix of the Estate of her son, William Allen Young, Jr., against Defendants Louisville/Jefferson County Metro Government, Louisville Metro Police Department Chief Steve Conrad, and LMPD Officers Russell Braun, Randall Richardson, and Paige Young. (Docket No. 12) Kirilova alleges that the officers fatally shot William Young without justification in violation of the United States Constitution and Kentucky law. (*See id.*) Louisville Metro and Conrad have moved to dismiss Kirilova's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.N. 15; D.N. 19) For the reasons set forth below, the Court will grant Defendants' motions.

### I.   Background

The following facts are set out in the complaint and accepted as true for purposes of the present motions. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

In 2017, William Young was a 31-year-old individual struggling with drug addiction and mental illness. (D.N. 12, PageID # 75) Besides occasionally residing with his mother, Young was homeless and would often sleep inside abandoned buildings. (*Id.*) On the night of February 11, 2017, Young was sleeping on the second floor of an abandoned building at 1234 Oleander

1

Avenue in Louisville, Kentucky. (*Id.*) Meanwhile, LMPD Officers Braun, Richardson, and Young received a report of an alleged burglary at that premises. (*Id.*) When they arrived at the scene, the officers entered the building, despite seeing that it was abandoned and partially boarded-up. (*Id.*) As they surveyed the building, the officers had their handguns drawn and held flashlights in each of their free hands. (*Id.*, PageID # 75–76)

The complaint alleges that in searching the building, "[the officers] failed to utilize features of the house to search and clear the premises without unnecessarily exposing themselves to a perceived risk." (*Id.*, PageID # 76) The officers shouted "police" on several occasions, but there is no evidence that William Young heard their warnings. (*Id.*) Upon seeing the officers, Young jumped up and rushed toward them with an object in his hand. (*Id.*) The officers proceeded to fire their weapons at Young numerous times. (*Id.*, PageID # 77) Young sustained gunshot wounds during the altercation. (*Id.*) The officers handcuffed Young; tragically, Young died a few minutes later. (*Id.*)

Kirilova brings this action against Louisville Metro, LMPD Chief of Police Steve Conrad, and Officers Braun, Richardson, and Young. (*See* D.N. 12) She asserts claims for relief under § 1983 against all Defendants. (*Id.*, PageID # 77–78) She also asserts state-law claims against Conrad and the officers. (*Id.*, PageID # 78) Louisville Metro and Conrad now move to dismiss Kirilova's claims against them.[1] (D.N. 15; D.N. 19)

## II.  Standard

In order to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[1] Louisville Metro filed an initial motion to dismiss on October 23, 2017, in which it raised essentially the same arguments at issue in its current motion to dismiss. (D.N. 7) However, because Kirilova moved to amend her complaint shortly thereafter (D.N. 9), the Court denied without prejudice the initial motion to dismiss. (*See* D.N. 11)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not shown that she is entitled to relief. *Id*. at 679. The complaint need not contain "detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [the Court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citing *Twombly*, 550 U.S. at 555). Furthermore, "[w]hile a complaint will survive a motion to dismiss if it contains either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory . . . legal conclusions masquerading as factual allegations will not suffice." *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (internal quotations omitted).

### III. Louisville Metro's Motion to Dismiss

In order to establish municipal liability under § 1983, Kirilova must show that the alleged constitutional violation occurred because of a municipal custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Kirilova may make the requisite showing by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations," such as ineffective screening during the hiring process. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

In her complaint, Kirilova presents three theories upon which to hold Louisville Metro liable under § 1983: (i) ratification, (ii) failure to train, and (iii) ineffective screening. (*See* D.N.

12) Even viewing Kirilova's complaint in the light most favorable to her, *see Tackett,* 561 F.3d at 488, the Court concludes that Kirilova has failed to allege sufficient facts to support her claims. Additionally, while the Court is not required to grant Kirilova a second opportunity to amend her complaint, *see Burkeen v. A.R.E. Accessories, LLC*, No. 5:16-CV-00017-GNS-LLK, 2017 WL 5076516, at *2 (W.D. Ky. Nov. 3, 2017) ("Contrary to Plaintiffs' contentions, the Sixth Circuit has never held that district courts *must* grant leave to amend *sua sponte* when justice so requires."), the Court has considered whether it would be appropriate here.

"[L]eave to amend a complaint may be denied where there is . . . repeated failure to cure deficiencies by amendments previously allowed." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (internal quotations omitted). The arguments raised in Louisville Metro's initial motion to dismiss are substantially similar to those at issue in its current motion to dismiss. (*See* D.N. 7-1; D.N. 15-1) Although Kirilova filed an amended complaint in response to the initial motion to dismiss (D.N. 9), for the reasons explained below, her amended complaint fails to cure her original complaint's deficiencies. The Court thus concludes that granting Kirilova an additional attempt to conform her complaint to federal pleading standards would be futile given her repeated failure "to allege a nexus between any [municipal] policy and the claimed events or injuries." *Gerald Williams v. Kentucky Ass'n of Ctys. Ins. Agency, Inc.*, No. 6:17-CV-222-REW-EBA, 2018 WL 3155818, at *5 (E.D. Ky. June 28, 2018); *see also Hogan v. Jacobson*, 823 F.3d 872, 885 n.3 (6th Cir. 2016) (finding that the district court did not err in declining to grant leave to amend *sua sponte* where "[t]he plaintiff never sought leave to amend before the district court and provide[d] nothing from which [the appellate court] could infer that she could amend her complaint [to conform to federal pleading standards]").

**A. Ratification**

To proceed with her ratification claim against Louisville Metro, Kirilova "must adequately allege . . . that an official with final decision making authority ratified illegal actions." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Burgess*, 735 F.3d at 478). "[R]atification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)).

Here, Kirilova has not adequately alleged that Louisville Metro ratified the officers' actions. She presents no facts, for example, to indicate that the officers' actions were "appealed to and affirmed by a[] [Louisville Metro] official." *See Arendale v. City of Memphis*, 519 F.3d 587, 602 (6th Cir. 2008). Nor does Kirilova present facts indicating that Louisville Metro ruled in the officers' favor following a formal investigation. *See Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118–19 (6th Cir. 1994). At most, Kirilova alleges that the officers "have received no punishment . . . nor have any changes been made to LMPD's policies, procedures, customs and practices," following the incident at issue. (D.N. 12, PageID # 77) However, the Court finds no binding precedent holding that a municipality's failure to change its policies following an alleged constitutional violation equals affirmative approval of the violation. Similarly, although the Sixth Circuit has recognized municipal liability under § 1983 for a city's failure to meaningfully investigate allegations of unconstitutional conduct, *see Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), municipal liability cannot be found solely from a single instance of failure to investigate. *Thomas v. City of Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005); *see also Burgess*, 735 F.3d at 478 ("[Plaintiffs] simply have not demonstrated a pattern of inadequate

investigation of similar claims as required."). In her complaint, Kirilova presents a single instance of an alleged failure to investigate. (*See* D.N. 12) This shortcoming alone warrants dismissal of her ratification claim against Louisville Metro. *See Thomas*, 368 F.3d at 434; *see generally Payne v. Sevier Cty., Tenn.*, 681 F. App'x 443, 446 (6th Cir. 2017) ("A plaintiff cannot establish a custom solely by pointing to the facts of [her] own case."). By alleging a single instance of failure to investigate, Kirilova has failed to plausibly allege a ratification claim.

Moreover, to be held liable, Louisville Metro's alleged failure to investigate must have been the "moving force" behind the constitutional deprivation at issue. *See Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) ("Regardless of whether the City failed to investigate the allegations of misconduct, and regardless of whether such failure amounted to a policy or custom, plaintiffs have not presented any evidence to indicate that the failure to investigate other unconnected misconduct was the moving force behind the shooting of plaintiffs."); *see also Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 n. 5 (6th Cir. 2006) ("We have not found any legal support for the proposition that, in the absence of deliberate indifference *before* a constitutional violation, a municipality may be liable for simply failing to investigate or punish a wrongdoer *after* the violation."). Because "subsequent ratification of past wrongdoing cannot logically be the moving force behind the [wrongdoing]," *see Swann v. City of Columbus*, No. 2:04-cv-578, 2007 WL 1831131, at *3 (S.D. Ohio June 25, 2007), a plaintiff asserting a failure-to-investigate claim must generally allege that a municipality's failure to investigate *prior* allegations of unconstitutional conduct caused the constitutional violation at issue. *See, e.g.*, *Hullett v. Smiedendorf*, 52 F. Supp. 2d 817, 828 (W.D. Mich. 1999) ("[M]unicipal liability for failing to investigate or discipline its officers cannot be derived from a single act by a non-policy-making municipal employee . . . . Proof of the existence of the policy

6

*prior* to the incident that is the subject of the complaint is necessary."); *see generally Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010) ("To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse.").

Kirilova does not allege any facts indicating that Louisville Metro failed to investigate previous allegations of unconstitutional conduct and that the failure was the "moving force" behind her son's death. (*See* D.N. 12) *Cf. Warren v. Lexington-Fayette Urban Cty. Gov't*, No. 5:16-140-DCR, 2016 WL 4491837, at *4 (E.D. Ky. Aug. 25, 2016) ("Warren alleges LFUCG was aware of the unconstitutional conduct of the officers and the result of LFUCG's inadequate training . . . . Additionally, she alleges that this policy was the moving force behind her unconstitutional arrest."). Moreover, Kirilova presents no facts indicating that Louisville Metro "knew or should have known of previous allegations of criminal misconduct" by its officers yet "failed to take adequate measures to investigate or prevent such misconduct" thereby causing her son's death. *Brown v. City of Memphis*, 440 F. Supp. 2d 868, 874 (W.D. Tenn. July 7, 2006). Kirilova's omission warrants dismissal of her ratification claim.

**B. Failure to Train**

Kirilova alleges that Louisville Metro failed to "train and supervise the conduct of [the officers at issue]" with a "total, deliberate and reckless disregard . . . to [William Young's] life." (D.N. 12, PageID # 75) "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train . . . . [A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61

(2011) (alteration omitted) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). Moreover, deliberate indifference based on a single violation of rights requires "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011).

To proceed with her failure-to-train claim, Kirilova must present sufficient "factual content that allows the court to draw the reasonable inference that [Louisville Metro] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Specifically, "[Kirilova] must identify and describe the official policy or custom that resulted in a constitutional violation." *Horn v. City of Covington*, No. 14–73–DLB–CJS, 2015 WL 4042154, at *4 (E.D. Ky. July 1, 2015). In the context of failure-to-train claims, this court has consistently dismissed complaints that failed to allege a factual background indicating that the injury at issue occurred as a result of a custom or policy implemented by the municipality. *See, e.g.*, *Neal v. Bolton*, No. 3:17CV-P496-TBR, 2018 WL 314829, at *3 (W.D. Ky. Jan. 5, 2018) ("None of the allegations in the complaint demonstrate that any alleged wrongdoing or injury occurred as a result of a policy or custom implemented or endorsed by the Louisville Metro Government."); *Phillips v. PTS of Am., LLC*, No. 3:17-cv-00603-JHM, 2017 WL 4582801, at *2 (W.D. Ky. Oct. 13, 2017) ("There are statements that suggest these policies or customs were related to the training and supervision of staff at LMDC, but the complaint contains no factual content upon which the Court could find that the plaintiffs are plausibly entitled to relief, such as what these policies or customs regarding training and supervision were, why they were inadequate, and how they contributed to the violation of [the decedent's] constitutional rights."); *Blaine v. Louisville Metro Gov't*, No. 3:13–CV–00427–CRS, 2014 WL 321142, at *2 (W.D. Ky. Jan. 29, 2014) ("In her Complaint, Plaintiff

clearly states that Defendant Louisville Metro Government was responsible for the policies, customs, and practices which ultimately caused [the decedent's] death, but fails to specifically identify the relevant policy, custom, or practice.").

In her complaint, Kirilova cites one instance of allegedly unconstitutional conduct on the part of the officers.[2] (*See* D.N. 12) Thus, to proceed with her claim, Kirilova must plead deliberate indifference based on a single violation of rights. Kirilova's complaint contains no factual content, however, upon which the Court could conclude that William Young's death was the result of reckless or grossly negligent training on the part of Louisville Metro. *See Harvey*, 453 F. App'x at 567. The principal argument Kirilova presents in response to Louisville Metro's motion to dismiss is that "[t]he relevant written policies of Louisville Metro have not yet been produced in this case, nor has [she] been permitted to conduct discovery on the practices that may have caused or contributed to Mr. Young's death." (D.N. 18, PageID # 108) Kirilova misstates her burden, however. As explained above, Kirilova must, at the pleading stage, present sufficient "factual content that allows the court to draw the reasonable inference that [Louisville Metro] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. She has failed to do so. Moreover, this Court has previously rejected Kirilova's exact argument. *See Blaine*, 2014 WL 321142 at *2 ("Plaintiff argues that Defendants' Motion to Dismiss is premature because they 'have been afforded no opportunity to discover the policies, customs, and practices that may have caused [the decedent's] death . . . . [However,] motions to dismiss are based on allegations contained in the relevant pleadings as opposed to facts developed in discovery.").

---

[2] Although Kirilova does cite other instances of alleged unconstitutional conduct, these appear in her response brief. (D.N. 21, PageID # 130) Kirilova may not amend the deficiencies in her complaint by including additional facts in her response to a motion to dismiss. *See Brown v. Accenture Fed. Servs.*, No. 15-24-GFVT, 2016 WL 3298543, at *10 (E.D. Ky. June 13, 2016).

Kirilova fails to provide any factual allegations to support her assertion beyond a "formulaic recitation" that Louisville Metro acted with deliberate indifference. *Twombly*, 550 U.S. at 555. (*See also* D.N. 12) This Court and others within this Circuit have consistently dismissed such bare-bones assertions of deliberate indifference. *See Cook v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:17-cv-471-DJH-DW, 2018 WL 523210 (W.D. Ky. Jan. 23, 2018); *Phillips*, 2017 WL 4582801 at *2; *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608 (S.D. Ohio 2016); *Flanigan v. Cty. of Oakland*, No. 15-12504, 2016 WL 304763 (E.D. Mich. Jan. 26, 2016); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931 (M.D. Tenn. 2012); *see also Pack v. City of Louisa Police Dep't.*, No. 05–23–HRW, 2006 WL 2349618 (E.D. Ky. Aug. 11, 2006) (dismissing the action at the summary judgment stage because of the plaintiff's conclusory allegations of deliberate indifference).

Because Kirilova fails to adequately allege that William Young's death occurred as a result of a policy or custom implemented by Louisville Metro, the Court will dismiss Kirilova's failure-to-train claim. *See Neal*, 2018 WL 314829 at *3; *Phillips*, 2017 WL 4582801 at *2; *Blaine*, 2014 WL 321142 at *2.

**C. Ineffective Screening**

Kirilova's final allegation against Louisville Metro is that the officers' actions resulted from Louisville Metro's failure to "employ qualified persons for positions of authority." (D.N. 12, PageID # 74) "The Supreme Court has placed a heavy burden on plaintiffs seeking to impose municipal liability as a result of hiring decisions." *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 967 (6th Cir. 2006) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)). To survive Louisville Metro's motion to dismiss, Kirilova must plausibly allege that knowledge of the officers' history would "lead a reasonable

policymaker to conclude that the plainly obvious consequence of the [hiring] decision . . . would be the deprivation of a third party's federally protected right[s]." *Brown*, 520 U.S. at 411. To do so, the facts alleged must plausibly show that the officers were "highly likely to inflict the *particular* injury suffered [by the decedent]." *Sweat v. Butler*, 90 F. Supp. 3d 773, 783 (W.D. Tenn. Mar. 9, 2015) (quoting *Brown*, 520 U.S. at 412).

As other courts within the Circuit have observed, dismissal is warranted where a complaint lacks a "factual underpinning from which a conclusion could plausibly be drawn that there was anything in the backgrounds of the police officers to alert [the municipality] that hiring them would result in the deprivation of a citizen's constitutional rights and that [the municipality] was deliberately indifferent to the risk posed." *Hall v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:17–cv–01268, 2018 WL 305751, at *20 (M.D. Tenn. Jan. 5, 2018); *see also Sweat*, 90 F. Supp. 3d at 783 ("Plaintiffs do not provide any facts displaying a connection between prior incidents of misconduct and the harm suffered in this case."); *Mitchell v. Grasha*, No. 1:12CV2181, 2013 WL 2552040, at *4 (N.D. Ohio June 10, 2013) ("There is no allegation of any 'red flags' or warning signs in the officers' background or personnel files . . . . [T]he § 1983 negligent hiring claims against the City [and the supervisors] are dismissed for failure to state a claim."). District courts in Kentucky have dismissed complaints that failed to allege that the municipality knew of the officers' unfitness at the time of hiring. *See Jackson v. Jernigan*, No. 3:16-cv-00750-JHM, 2017 WL 1962713, at *4 (W.D. Ky. May 11, 2017) ("[T]he complaint contains no allegations that there were red flags that would have indicated that either [officer] would cause the particular constitutional violations alleged by [the plaintiff]."); *Compton v. City of Harrodsburg, Ky.*, No. 5:12–cv–302–JMH, 2013 WL 663589, at *7 (E.D. Ky. Feb. 22, 2013) ("It is clear, however, that Plaintiff's Complaint and Amended Complaint are completely devoid

11

of allegations that [the officer] engaged in any sexual misconduct prior to his employment, and was thus unfit for duty as a police officer. Nor does the Plaintiff allege that [the supervisor] or the City knew or should have known of any such misconduct.").

Here, Kirilova alleges that the incident at issue "resulted from the failure of . . . Louisville Metro and Conrad to employ qualified persons for positions of authority." (D.N. 12, PageID # 74) Kirilova fails, however, to plead "'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). Kirilova's complaint contains no allegation that Louisville Metro or Conrad knew of the officers' unfitness at the time of hiring. Indeed, Kirilova fails to even allege any "red flags" or prior misconduct on the part of the officers. These omissions are fatal to her claim concerning Louisville Metro's hiring decisions.[3] *See Jackson*, 2017 WL 1962713 at *4; *Compton*, 2013 WL 663589 at *7.

Because Kirilova has failed to adequately allege a theory upon which Louisville Metro may be held liable, the Court will grant Louisville Metro's motion to dismiss.

### IV. Conrad's Motion to Dismiss

Conrad argues that Kirilova fails to plausibly allege a § 1983 claim against him. (D.N. 19-1) He also argues that Kirlova's state-law claims against him fail as a matter of law. (*Id.*) Kirilova relies on two theories of supervisory liability in support of her § 1983 claim against Conrad: (i) ratification and (ii) failure to train. (*See* D.N. 12)

---

[3] To the extent that Kirilova asserts a claim against Conrad for his alleged role in hiring the officers at issue, her claim fails for the same reason. Kirilova presents no factual content regarding Conrad's decision to hire the officers. (*See* D.N. 12)

**A. Ratification**

The Sixth Circuit has "long held that supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor," and that "a mere failure to act will not suffice to establish supervisory liability." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Active involvement means that the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009)). At a minimum, a plaintiff must allege that the supervisor "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). However, knowledge of the unconstitutional conduct and a subsequent failure to act does not constitute acquiescence in the conduct. *Id*. Moreover, "[a]s part of this inquiry, this [C]ourt also considers whether there is a causal connection between the defendant's wrongful conduct and the violation alleged." *Peatross*, 818 F.3d at 242.

Here, Kirilova presents no factual content indicating that Conrad encouraged or directly participated in the officers' actions. (*See* D.N. 12) Indeed, Kirilova fails to even allege that Conrad encouraged or directly participated in the officers' actions. (*Id.*) At most, Kirilova asserts that Conrad "endorsed and ratified" the misconduct because the officers "received no punishment, additional training, or additional supervision as a result of [the] incident." (*Id*, PageID # 77) Conrad may not be held liable for his mere failure to act, however. Federal courts in Kentucky have consistently dismissed supervisory-liability claims where the plaintiff merely alleged that the supervisor failed to act following an alleged constitutional violation. *See Thorpe v. Breathitt Cty. Bd. of Educ.*, 8 F. Supp. 3d 932, 943 (E.D. Ky. Mar. 21, 2014) ("While, if true,

13

[the supervisors'] inaction in the investigation of the . . . incident can be called negligent and even morally disturbing, one incident of inaction, without more, does not rise to the level of deliberate indifference to [the plaintiff's] constitutional rights and does not amount to 'active unconstitutional behavior' for purposes of a claim under Section 1983."); *see also Begley v. Tyree*, No. 6:14-191-KKC, 2016 WL 7013469, at *4 (E.D. Ky. Nov. 30, 2016) ("[T]he amended complaint asserts only that [the supervisor] refused to investigate [the plaintiff's] excessive force claim. [The plaintiff] does not allege that [the supervisor] was personally involved in the alleged excessive force."). Moreover, even viewing Kirilova's complaint in the light most favorable to her, the Court cannot find that she has adequately alleged that Conrad failed to investigate prior instances of officer misconduct and that his failure was the "moving force" behind William Young's death. *See Peatross*, 818 F.3d at 242. Accordingly, the Court will dismiss Kirilova's ratification claim against Conrad.

**B. Failure to Train**

"In order to establish personal liability for a failure to train and supervise, 'there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (alteration omitted) (quoting *Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (quoting *Taylor*, 69 F.3d at 81). In fact, "[b]ecause § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "[A]bsent evidence of personal involvement in the underlying misconduct, failure-to-

train claims against individual defendants are properly deemed brought against them in their official capacities, to be treated as claims against the county." *Harvey*, 453 F. App'x at 563 (citing *Miller*, 408 F.3d at 817 n.3). Accordingly, a plaintiff must allege facts indicating that the supervisor was personally involved in the alleged unconstitutional activity. *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 544 (6th Cir. 2008).

As explained above, Kirilova fails to allege that Conrad was personally involved in the death of William Young. (*See* D.N. 12) Besides her conclusory language that Conrad failed to train the officers at issue, Kirilova does not provide facts suggesting that Conrad encouraged or directly participated in the officers' conduct or that at a minimum he implicitly authorized, approved, or acquiesced in the conduct. (*Id*.) The Court will therefore dismiss Kirilova's failure-to-train claim against Conrad. *See Harvey*, 453 F. App'x at 563; *see also Smith v. Bolton*, No: 3:17-CV-00468-JHM, 2017 WL 5180960, at *3 (W.D. Ky. Nov. 8, 2017) ("While Plaintiff's Complaint offers a formulaic recitation of the elements claiming that 'defendants directly participated in unconstitutional conduct described herein, encouraged it, implicitly authorized it, approved it, and/or knowingly acquiesced in it,' the Complaint utterly fails to support these conclusory allegations with any factual assertions." (alteration omitted)); *Harper v. Conrad*, No. 3:14–CV–P523–H, 2014 WL 5100625, at *4 (W.D. Ky. Oct. 10, 2014) ("Plaintiff's complaint is void of any allegation that Defendant Conrad directly participated or implicitly authorized, approved, or acquiesced in the alleged wrongful behavior. Accordingly, the failure-to-train claim against Defendant Conrad in his individual capacity will be dismissed from this action for failure to state a claim upon which relief may be granted.").

**C. State-Law Claims**

Kirilova alleges two state-law claims against Conrad: (i) negligence/gross negligence and (ii) wrongful death. (D.N. 12, PageID # 78) As an initial matter, Kirilova provides no factual assertion that Conrad's own negligence led to William Young's death. (*Id.*) Rather, it appears that Kirilova seeks to hold Conrad liable for the alleged negligent actions of his subordinates. Under Kentucky law, however, "a claim against a public official must contain some allegation that the official was directly involved in the negligent acts of subordinates, otherwise, there is no vicarious liability for the public official." *Juillerat v. United States*, No. 3:16-cv-00276-TBR, 2016 WL 6156179, at *6 (W.D. Ky. Oct. 21, 2016) (internal quotations omitted) (citing *Moores v. Fayette Cty.*, 418 S.W.2d 412, 414 (Ky. 1967)); *see also Yanero v. Davis*, 65 S.W.3d 510, 528 (Ky. 2001) ("Public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those employed by them if they have employed persons of suitable skill."). Thus, "for Chief Conrad to be liable for any actions of his subordinates, he must have either employed persons he knew to be incompetent for their positions or he must have been somehow directly involved in the alleged negligent acts of his subordinates." *Juillerat*, 2016 WL 6156179 at *6. As explained above, Kirilova has failed to plead any facts that raise the plausible inference that Conrad had reason to question the officers' competence. (*See* D.N. 12) Nor has Kirilova provided facts showing that Conrad was directly involved in the incident at issue. (*See id.*) The Court will therefore dismiss Kirilova's state-law claims against Conrad. *See Smith*, 2017 WL 5180960 at *3 ("[T]he Complaint . . . does not allege any facts to support a claim that Defendants ratified or participated in the acts of Unknown Officers. Thus, Plaintiff's allegations of negligence against [the] Defendants . . . fail to state a claim and are dismissed.").

## V. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendant Louisville Metro's motion to dismiss (D.N. 15) is **GRANTED**. The Clerk of Court is **DIRECTED** to terminate Louisville Metro as a defendant in the record of this matter.

(2) Defendant Steve Conrad's motion to dismiss (D.N. 19) is **GRANTED**. The Clerk of Court is **DIRECTED** to terminate Conrad as a defendant in the record of this matter.

(3) Consistent with the Court's prior order (D.N. 16), this matter is **REFERRED** to Magistrate Judge Dave Whalin for a status conference.

July 9, 2018

**David J. Hale, Judge**
**United States District Court**